IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH INSTAGRAM ACCOUNT, **JAMIE_LOVE**, THAT IS STORED AT PREMISES CONTROLLED BY META PLATFORMS, INC. | Case No. 1:22mj74<br><br>**Filed Under Seal** |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Zachary S. Mealey, a Task Force Officer ("TFO") with the Federal Bureau of Investigation ("FBI"), being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this Affidavit in support of an application for a search warrant for information associated the Instagram account, **Jamie_Love** (the "SUBJECT ACCOUNT"), that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc. ("Meta"), an electronic communications service and/or remote computing service provider headquartered at 1601 Willow Road in Menlo Park, California. The information to be searched is described in the following paragraphs and in **Attachment A**. This Affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Meta to disclose to the government copies of the information (including the content of communications) further described in Section I of **Attachment B**. Upon receipt of the information described in Section I of **Attachment B**, government-authorized persons will review that information to locate the items described in Section II of **Attachment B**.

2. I am a Task Force Officer ("TFO") with the Federal Bureau of Investigation's ("FBI") Child Exploitation and Human Trafficking Task Force and have been so assigned since

July of 2021. I have been a Deputy Sheriff with the Harrison County Sheriff's Office since October of 2011. I graduated from the 149th Basic Class of the West Virginia State Police Academy and became a certified law enforcement officer in April of 2012. I have conducted hundreds of investigations and have hundreds of hours of training and field experience. I have conducted multiple complex investigations to include child exploitation, robbery and homicide. I have testified in judicial proceedings concerning the prosecution of child exploitation related offenses. I have been the affiant on, and participated in the execution of, numerous search warrants. I have also received training in the proper identification, preservation, and collection of digital devices and storage media.

3. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on my training and experience and the facts as set forth in this Affidavit, there is probable cause to believe that violations of Title 18 U.S.C. § 2252A(a)(5)(B) [Possession of Child Pornography] and Title 18 U.S.C. § 2252A(a)(1) [Transportation of Child Pornography] have been committed by **Joseph Buffey**. There is also probable cause to search the SUBJECT ACCOUNT [more particularly described in **Attachment A**] for information and other material constituting evidence, instrumentalities, contraband, and/or fruits [more particularly described in **Attachment B**] of these crimes,.

## JURISDICTION

5. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

2

## **PROBABLE CAUSE**

6.      Based on my review of Cyber Tipline Report 110015331 from the National Center for Missing and Exploited Children ("NCMEC"), law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

7.      On February 23, 2022, I was assigned an Internet Crimes Against Children ("ICAC") investigation through the ICAC Data System. The Harrison County Sheriff's Office is an ICAC Affiliate and is regularly assigned ICAC investigations.

8.      Cyber Tipline Report 110015331 from the National Center for Missing and Exploited Children ("NCMEC") had been originally submitted by Instagram Inc. regarding one image uploaded through the Instagram Direct product for the account, **Jamie_Love**. The reported incident date and time was November 11, 2021 at 23:57:27 UTC. The reported registered phone number for the account was **304-709-8669**.

9.      I have viewed the uploaded photo, and it is a zoomed-in image showing a small, pre-pubescent female having her anus penetrated by a male's penis. The male has pubic hair visible. There is also what appears to be semen covering the pubic area and vagina of the child. In light of the fact that that it is a depiction of a minor engaged in sexually explicit conduct, this image would meet the Federal definition of child pornography. 18 § U.S.C. 2256 (8)(A).

10.     The investigation was initially assigned to Detective Collins from the Clarksburg Police Department. Detective Collins submitted an administrative subpoena to Suddenlink Communications for the IP address 173.81.167.3 and was later provided subscriber information. The documentation showed the subscriber name as Jeremy Cochran with a service address of 438 Downbridge Road in Enterprise, WV 26568.

3

11. During the investigation, I located a West Virginia OLN for Jeremy Cochran (F034280) that has the address of 396 Downbridge Road in Enterprise, WV. I learned that the structure designated as 438 Downbridge Road and structure designated 396 Downbridge Road are on the same shared tax plot. I also learned through open-source intelligence that Jeremy Cochran and a Kayla Buffey are in a relationship. I located a West Virginia OLN for Kayla Buffey (F722002), and her address is listed as 438 Downbridge Road Enterprise, WV.

12. On 3/1/2022, I drove to 438 Downbridge Road Enterprise, WV to observe the residence. While at the residence, I observed a white BMW parked in the driveway displaying WV registration 2YH649 registered to a **Joseph Buffey** and a black Chevrolet Equinox in the driveway displaying WV registration 95D256 registered to Kayla Buffey. I also observed that the structures associated with the two mailing addresses are so close to each other that they could easily share a Wi-Fi internet connection.

13. On 3/2/2022, I executed search warrants at 396 and 438 Downbridge Road in Enterprise, Harrison County with the assistance of other Harrison County Sheriff's Office Detectives, Patrol Deputies, and the West Virginia State Police Crimes Against Children Unit. During the execution of the search warrant, an interview was conducted with Kayla Buffey. Kayla stated that she thought she was the only one in the residence that used Instagram. Kayla checked the phone number **304-709-8669** from her phone contacts and stated that the phone number belonged to her brother, who is **Joseph Anthony Buffey**. During this interview, I explained that is the phone number that is registered to the Instagram account that was involved in the Cyber Tipline Report.

14. During an interview with **Joseph Buffey**, he stated he had two cell phones. The first had the number, 304-446-4900, and the second had the number, **304-709-8669**. **Buffey**

4

initially stated that he didn't use Instagram, but later stated that he has used Instagram in the past. When asked if he had ever used the Instagram account, **Jamie_Love**, he stated that he would have to say "yeah" because it had to have come from his phone. **Buffey** stated that he has used the darkweb in the past and stated he accessed it by utilizing a TOR browser on his cell phone.

15. On April 6, 2022, the West Virginia State Police Digital Forensic Unit began a digital forensic examination of **Joseph Buffey's** Samsung, model SM-A215U smart phone, which was seized during the search. The examination revealed one montage-style video (23) twenty-three minutes and (13) thirteen seconds in length. The video was stored on the phone in an application called RAR, which is used (among other things) to compress and store large digital files. The file in question was entitled "**8Yo Lisa 4Yo Mike 7Yo Lara 8Yo Suck Fuck Cumshot – From – Ariel New! – 9Yo Blowjob Anal Pedo Young.avi**". I am aware that many of the terms incorporated within this file name are associated with an interest in child pornography and are commonly included in titles of files containing child pornography so as to facilitate on-line searches for the same. The file in question is actually an amalgamation of multiple individual videos depicting pre-pubescent minor females engaged in sex acts (e.g., vaginal intercourse, anal sex, oral sex, masturbation) – usually with one or two adult males. These videos appear to depict actual minors engaged in various forms of sexually explicit conduct. 18 U.S.C. § 2256(2)(B) & (8)(A).

## BACKGROUND CONCERNING INSTAGRAM[1]

16. Instagram is a service owned by Meta, a United States company and a provider of an electronic communications service as defined by 18 U.S.C. §§ 3127(1) and 2510. Specifically, Instagram is a free-access social networking service, accessible through its website and its mobile application, that allows subscribers to acquire and use Instagram accounts, like the SUBJECT ACCOUNT described in **Attachment A**, through which users can share messages, multimedia, and other information with other Instagram users and the general public.

17. Meta collects basic contact and personal identifying information from users during the Instagram registration process. This information, which can later be changed by the user, may include the user's full name, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, credit card or bank account number, and other personal identifiers. Meta keeps records of changes made to this information.

18. Meta also collects and retains information about how each user accesses and uses Instagram. This includes information about the Internet Protocol ("IP") addresses used to create and use an account, unique identifiers and other information about devices and web browsers used to access an account, and session times and durations.

19. Each Instagram account is identified by a unique username chosen by the user. Users can change their usernames whenever they choose but no two users can have the same

---

[1] The information in this section is based on information published by Meta on its Instagram website, including, but not limited to, the following webpages: "Data Policy," https://help.instagram.com/519522125107875; "Information for Law Enforcement," https://help.instagram.com/494561080557017; and "Help Center," https://help.instagram.com.

6

usernames at the same time. Instagram users can create multiple accounts and, if "added" to the primary account, can switch between the associated accounts on a device without having to repeatedly log-in and log-out.

20.     Instagram users can also connect their Instagram and Facebook accounts to utilize certain cross-platform features, and multiple Instagram accounts can be connected to a single Facebook account. Instagram accounts can also be connected to certain third-party websites and mobile apps for similar functionality. For example, an Instagram user can "tweet" an image uploaded to Instagram to a connected Twitter account or post it to a connected Facebook account, or transfer an image from Instagram to a connected image printing service. Meta maintains records of changed Instagram usernames, associated Instagram accounts, and previous and current connections with accounts on Meta and third-party websites and mobile apps.

21.     Instagram users can "follow" other users to receive updates about their posts and to gain access that might otherwise be restricted by privacy settings (for example, users can choose whether their posts are visible to anyone or only to their followers). Users can also "block" other users from viewing their posts and searching for their account, "mute" users to avoid seeing their posts, and "restrict" users to hide certain activity and prescreen their comments. Instagram also allows users to create a "close friends list" for targeting certain communications and activities to a subset of followers.

22.     Users have several ways to search for friends and associates to follow on Instagram, such as by allowing Meta to access the contact lists on their devices to identify which contacts are Instagram users. Meta retains this contact data unless deleted by the user and periodically syncs with the user's devices to capture changes and additions. Users can similarly

7

allow Meta to search an associated Facebook account for friends who are also Instagram users. Users can also manually search for friends or associates.

23. Each Instagram user has a profile page where certain content they create and share ("posts") can be viewed either by the general public or only the user's followers, depending on privacy settings. Users can customize their profile by adding their name, a photo, a short biography ("Bio"), and a website address.

24. One of Instagram's primary features is the ability to create, edit, share, and interact with photos and short videos. Users can upload photos or videos taken with or stored on their devices, to which they can apply filters and other visual effects, add a caption, enter the usernames of other users (i.e., "tag"), or add a location. These appear as posts on the user's profile. Users can remove posts from their profiles by deleting or archiving them. Archived posts can be reposted because, unlike deleted posts, they remain on Meta's servers.

25. Instagram users can interact by "liking" each other's posts, adding or replying to comments, or sharing posts within or outside of Instagram. Users receive notification when they are tagged in a post by its creator or mentioned in a comment (users can "mention" others by adding their username to a comment followed by "@"). An Instagram post created by one user may appear on the profiles or feeds of other users depending on a number of factors, including privacy settings and which users were tagged or mentioned.

26. An Instagram "story" is similar to a post but can be viewed by other users for only 24 hours. Stories are automatically saved to the creator's "Stories Archive" and remain on Meta's servers unless manually deleted. The usernames of those who viewed a story are visible to the story's creator until 48 hours after the story was posted.

8

27. Instagram allows users to broadcast live video from their profiles. Viewers can like and add comments to the video while it is live, but the video and any user interactions are removed from Instagram upon completion unless the creator chooses to send the video to IGTV, Instagram's long-form video app.

28. Instagram Direct, Instagram's messaging service, allows users to send private messages to select individuals or groups. These messages may include text, photos, videos, posts, videos, profiles, and other information. Participants to a group conversation can name the group and send invitations to others to join. Instagram users can send individual or group messages with "disappearing" photos or videos that can only be viewed by recipients once or twice, depending on settings. Senders can't view their disappearing messages after they are sent but do have access to each message's status, which indicates whether it was delivered, opened, or replayed, and if the recipient took a screenshot. Instagram Direct also enables users to video chat with each other directly or in groups.

29. Instagram offers services such as Instagram Checkout and Facebook Pay for users to make purchases, donate money, and conduct other financial transactions within the Instagram platform as well as on Facebook and other associated websites and apps. Instagram collects and retains payment information, billing records, and transactional and other information when these services are utilized.

30. Instagram has a search function which allows users to search for accounts by username, user activity by location, and user activity by hashtag. Hashtags, which are topical words or phrases preceded by a hash sign (#), can be added to posts to make them more easily searchable and can be "followed" to generate related updates from Instagram. Meta retains records of a user's search history and followed hashtags.

31. Meta collects and retains location information relating to the use of an Instagram account, including user-entered location tags and location information used by Meta to personalize and target advertisements.

32. Meta uses information it gathers from its platforms and other sources about the demographics, interests, actions, and connections of its users to select and personalize ads, offers, and other sponsored content. Meta maintains related records for Instagram users, including information about their perceived ad topic preferences, interactions with ads, and advertising identifiers. This data can provide insights into a user's identity and activities, and it can also reveal potential sources of additional evidence.

33. In some cases, Instagram users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Meta typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

34. For each Instagram user account, Meta collects and retains the content and other records described above, sometimes even after it is changed by the user (including usernames, phone numbers, email addresses, full names, privacy settings, email addresses, and profile bios and links).

35. As discussed above, an image meeting the definition of child pornography [18 U.S.C. § 2256(8)(A)] was uploaded to the Instagram account, **Jamie_Love.** In my training and experience, evidence of who was using Instagram and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described

above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

36. For example, the stored communications and files connected to an Instagram account may provide direct evidence of the offenses under investigation. Based on my training and experience, instant messages, voice messages, photos, videos, and documents, are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

37. It is likely that information found in and associated with the **Jamie_Love** account will show and corroborate that the owner and user of that account was in fact **Joseph Buffey**, and not Jeremy Cochran, Kayla Buffey, or some other individual. The user's account activity, logs, stored electronic communications, and other data retained by Meta can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, (messaging logs, photos, and videos and data associated with these, such as date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

38. Account activity may also provide relevant insight into the account user's state of mind as it relates to the offenses under investigation. For example, information on the account

11

may indicate the user's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

39. Other information connected to the use of Instagram may lead to the discovery of additional evidence. For example, associated and linked accounts, stored communications, photos, and videos may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, stored communications, contact lists, photos, and videos can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

40. Therefore, Meta's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Instagram. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

41. I respectfully submit that there is probable cause to believe that evidence, fruits, and instrumentalities of violations, or attempted violations, of Title 18 U.S.C. § 2252A(a)(5)(B) [Possession of Child Pornography] and Title 18 U.S.C. § 2252A(a)(1) [Transportation of Child Pornography] will be located in the SUBJECT ACCOUNT described in **Attachment A**.

## CONCLUSION

42. Based on the forgoing, I request that the Court issue the proposed search warrant.

43. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving the warrant on Meta. Because the warrant will be served on Meta, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

Zachary S. Mealey
F.B.I. Task Force Officer

Subscribed and sworn to before me on July 20, 2022

Honorable Michael J. Aloi
UNITED STATES MAGISTRATE JUDGE